# Exhibit C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------- x
BRIAN QUIRE,                              :
                                          :
                    Plaintiffs,           :
        -against-                         :
                                          :  **VERIFIED COMPLAINT**
CITY OF NEW YORK; NEW YORK CITY POLICE    :
DEPARTMENT; PSYCHEMEDICS                  :
CORPORATION; and THOMAS CAIRNS,           :  Index No.: 154954/2019
individually and in his official capacity as Senior  :
Scientific Advisor for PSYCHEMEDICS       :
CORPORATION,                              :
                                          :
                                          :
                    Defendants.           :
---------------------------------------- x

Plaintiff Brian Quire ("Plaintiff"), by his attorneys, The Kurland Group, with offices at 85 Broad St., 28th Floor New York, NY 10004, complaining of the Defendants, alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff Brian Quire brings this action against Defendants City of New York; New York City Police Department; Psychemedics Corporation; and Thomas Cairns, individually and in his official capacity as Senior Scientific Advisor for Psychemedics Corporation to secure injunctive and monetary relief from Defendants' tortious conduct that resulted in his suspension, demotion, and ultimate termination from the New York City Police Department.

2. Plaintiff alleges that Defendants' actions and inactions detailed herein amount to intentional, reckless, and/or negligent acts that Defendants knowingly, willfully, and/or negligently failed to control and/or disclose in violation of Plaintiff's statutory and common law rights.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the parties and the subject matter of this action

1

pursuant to CPLR §301, *et seq.*

4. Venue is proper in New York County pursuant to CPLR § 503 and CPLR § 509, as the causes of action arose in New York County.

5. Plaintiff filed his Notice of Claim within ninety days after his claim arose upon Defendant City of New York by delivering copies of the notice to the person designated by law as a person to whom such claims may be served. Such Notice of Claim was in writing; sworn to by Plaintiff; set forth the nature of the claim, the time, place, and manner by which the claim arose; and the damages and injuries claimed to have been sustained by Plaintiff.

6. Following a 50-H Hearing, Defendants neglected to adjust the claims within the statutory time period.

## JURY DEMAND

7. Plaintiff demands a trial by jury in this action on each and every one of his claims.

## PARTIES

8. **PLAINTIFF BRIAN QUIRE** ("Plaintiff") is an individual residing in the State of New York.

9. **DEFENDANT CITY OF NEW YORK** (the "City" or "City of New York") is a municipality duly incorporated under the laws of the State of New York and maintains its principal place of business at 1 Centre Street, New York, New York 10007.

10. **DEFENDANT NEW YORK CITY POLICE DEPARTMENT** ("NYPD") is an agency of the City of New York and maintains its principal place of business at One Police Plaza, New York, New York 10007.

11. **PSYCHEMEDICS CORPORATION** ("Psychemedics") is a California

2

corporation conducting business in the State of New York.

12. **THOMAS CAIRNS** ("Dr. Cairns") is an individual residing in the State of California who conducts business in the State of New York.

## STATEMENT OF FACTS

13. Plaintiff was appointed as a Police Officer with the NYPD on or around January 9, 2006 and was an exemplary member during his twelve (12) years of public service.

14. Plaintiff did not have a history of discipline regarding his employment and received high job performance evaluations from his superiors.

15. As a result of his dedicated service, highly-rated job performance, and professionalism, Plaintiff was promoted to Detective in or around September 2015.

16. In addition, during his employment with NYPD, Plaintiff received multiple Meritorious Police Duty ("MPD") and Excellent Police Duty ("EPD") awards for intelligent and valuable police service demonstrating special faithfulness or perseverance, and/or highly creditable acts of police service over a period of time, and/or an intelligent act materially contributing to a valuable accomplishment.

17. Plaintiff held the rank of Detective until in or around August 2016 when he was demoted to the rank of Police Officer based upon the results of drug testing performed on hair samples.

18. Prior to the drug test at issue herein, Plaintiff had no history of exhibiting any signs of drug use and tested negative on all prior drug tests – both random and promotional.

**The Hair Test**

19. On or about April 28, 2016, Plaintiff was ordered by NYPD to report for a random

drug screening test, which was performed by collecting hair samples from Plaintiff's leg, as opposed to using more traditional drug testing methods, such as urine and/or blood samples.

20. Upon information and belief, the City of New York and NYPD contract with Psychemedics to provide drug testing services on hair samples of NYPD members.

21. Psychemedics purports to hold a license from the New York State Department of Health in order to provide such services.

22. According to Psychemedics, it dissolves the hair sample and splits it into five (5) samples. The first sample is tested by enzyme immunoassay ("EIA") as an "unwashed" sample. According to Dr. Cairns, the EIA sample will be deemed "presumptively positive" if it is above the administrative cut-off level for any tested drug.

23. While Psychemedics ultimately determined that Plaintiff's hair sample tested positive for methamphetamine, the cut-off level was arbitrary at the EIA stage of five (5) nanograms per ten (10) milligrams of hair.

24. In other words, Psychemedics alone, and not the NYPD and/or the City of New York and/or any other governmental/regulatory entity, sets the cut-off levels to determine if an NYPD employee or applicant will test positive for use of illegal drugs, despite the fact that, upon information and belief, there are currently no government-mandated guidelines for drug testing from hair samples.

25. While Dr. Cairns, a Senior Scientific Advisor for Psychemedics, contends that his company's hair testing is the most stringent, the scientific community has identified several categories of problems with using hair analysis as the sole basis to determine whether an individual has intentionally ingested drugs of abuse, including but not limited to 1) mechanisms of diffusion and absorption; 2) issues with wash kinetics and metabolite rations; 3) environmental or external

4

contamination; 4) hair color bias; 5) comparability of results to other test matrices; and 5) the inability to interpret test results to distinguish "use" of drugs versus "exposure" to drugs.

26. While hair testing may be used in certain circumstances to determine the presence of drugs in the hair sample, it cannot be used to determine how those drugs got into the hair, whether by ingestion or absorption.

27. In other words, the method of collecting and testing hair samples for the presence of drugs of abuse cannot eliminate the possibility of atmospheric exposure as the reason for the presence of drugs in the sample and as such is not a scientifically verifiable or appropriate way to determine drug usage. The method of collection and testing of Plaintiff's hair in the instant matter is further flawed, including but not limited to the collection of hair samples from Plaintiff's leg rather than his head, as recommended.

28. Nevertheless, on its website, Psychemedics proudly represents that "[w]hether you're a pill-popper, a pot-head or a crack-head, Psychemedics . . . has the technology to sniff you out before your potential employer offers you a job."

29. Contrary to Psychemedics' representation that the hair test is fair, accurate, and objective, it has been determined to be flawed, imprecise, and not able to determine drug usage as compared to the presence of drugs in the hair.

30. Despite this lack of certainty in hair testing to conclusively establish ingestion of drugs of abuse, NYPD and the City of New York still utilize Psychemedics' services exclusively to determine whether members of the Police Department can remain employed based on their 'zero tolerance' policy for drug use. Moreover, Psychemedics' hair testing is used by NYPD and the City of New York to perform a task it functionally cannot do—determined whether or not an employee has in fact used drugs.

31. Psychemedics continues to profit from its misrepresentation regarding the effectiveness of hair testing.

32. The primary scientific advocate of using hair testing for determining drug usage is Dr. Cairns who upon information and belief is not only in a leadership position at Psychemedics but has a financial interest in the success of the company.

**NYPD Takes Adverse Action Against Plaintiff**

33. On May 6, 2016, Psychemedics notified NYPD that Plaintiff's hair samples purportedly tested positive for methamphetamine.

34. On May 10, 2016, Plaintiff met with Police Surgeon Joseph Ciuffo ("Dr. Ciuffo"), who acted as NYPD's Medical Review Officer ("MRO") tasked with interviewing the test-subject to determine whether an alternative explanation existed for the positive test.

35. State law has held the MRO's medical determination to be substantive and non-delegable. *See, e.g., Matter of Riverhead Cent. School Dist. of Towns of Riverhead, Southampton & Brookhaven v. Riverhead Cent. Faculty Assn.*, 140 A.D.2d 526 (2d Dep't 1988).

36. However, Dr. Ciuffo failed to independently confirm whether an alternative explanation existed for the positive test and failed to rule out all alternative reasons that the hair test might have been positive for reasons other than illicit drug use.

37. On May 16, 2016, Dr. Ciuffo summarily "verified" Plaintiff's positive result based on a phone call he had with Plaintiff, and Dr. Ciuffo subsequently referred the matter to the Internal Affairs Bureau.

38. Shortly thereafter, on May 19, 2016, NYPD initiated its disciplinary proceeding against Plaintiff.

39. At the time NYPD initiated its disciplinary proceeding against Detective Quire, it did not have any written policy or procedure for Medical Review Officers. Furthermore, NYPD was not in possession of any standard operating procedure of Psychemedics regarding the hair analysis process relied on by NYPD in issuing disciplinary charges.

40. On June 16, 2016, Plaintiff was suspended by NYPD following the issuance of written Charges and Specifications and prior to his administrative trial.

41. On July 11, 2016, Plaintiff was demoted from his position as Detective to his prior civil service title of Police Officer.

42. Ultimately, on or around February 16, 2018, Plaintiff was terminated from his employment with NYPD upon a determination by the Office of Administrative Trials and Hearings ("OATH") that he ingested methamphetamine.

43. OATH's determination was based upon Psychemedics' hair test results and the testimony of Psychemedics Senior Scientific Advisor, Defendant Dr. Cairns.

44. Upon information and belief, NYPD's drug testing process deviates substantially from other City agencies that conduct drug testing by urinalysis or blood analysis.

45. Instead, NYPD solely uses hair analysis to perform all drug testing, and the results of the hair testing are not confirmed or cross-analyzed with urinalysis or any other method of testing.

46. While hair testing may be reliable to determine the presence of drugs, it is not reliable to distinguish between whether the hair was exposed to drugs from the subject's use of drugs, or through passive environmental contamination of drugs.

47. NYPD began using hair analysis for drug testing, in conjunction with urinalysis, in or around 1996, when these methods were used to test Police Academy applicants. From that time,

upon information and belief the NYPD has transitioned from using hair analysis in conjunction with urinalysis to using only hair analysis since in or around 2005, which upon information and belief was done in an effort to save costs and make the drug testing procedure easier to administer.

48.     Since that time, the NYPD has used Psychemedics as its exclusive testing and analysis laboratory despite the fact that it knew or should have known that using hair testing exclusively to test for the presence of drugs in the hair sample cannot conclude whether or not drug usage has occurred.

49.     Throughout NYPD's use of hair testing, the controversial aspects of the testing process, as well as the fact that hair testing is highly susceptible to false positives, have been well-documented and made known to the Department. For example, when NYPD began its hair testing program, the fraternal organization 100 Blacks in Law Enforcement Who Care issued their concerns with the hair testing process, citing a 1996 letter from the U.S. Health and Human Services Department stating the potential for racial bias and hair color bias to return false positive results at a disparate rate for people of color and women.

50.     These concerns further highlighted the unique nature of police work that requires police officers to come into frequent contact with and exposure to drugs of abuse through their daily duties. This reality thereby puts police officers at a heightened risk of a false positive hair test due to external contamination or environmental exposure.

51.     Despite this vast array of generally accepted knowledge within the scientific community that casts doubt upon the veracity of hair samples that test positive for ingestion – as opposed to passive exposure – of illicit substances, NYPD and the City of New York have failed to adjust or modify its method of drug testing for members of the NYPD.

52.     Despite Plaintiff's record of exemplary service and good character, NYPD

continues to rely exclusively on Psychemedics' hair analysis, buttressed by Dr. Cairns' testimony as the sole basis for Plaintiff's termination.

53. By and through the acts of Defendants complained of herein, Plaintiff has suffered permanent damage to his career including, but not limited to, lost wages and other benefits and privileges of employment and damage to his reputation and earnings potential.

54. By and through the acts of Defendants complained of herein, Plaintiff has and will continue to suffer emotional distress and mental anguish as a result of Defendants' unlawful conduct.

## AS FOR THE FIRST CAUSE OF ACTION AGAINST DEFENDANTS FOR VIOLATION OF CONSTITUTIONAL RIGHTS OF PLAINTIFF (UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983)

55. Plaintiff repeats and reiterates each and every allegation set forth above with the same force and effect as if more fully set forth at length herein.

56. Pursuant to Civil Service Law § 75, Plaintiff, a tenured NYPD officer, has a protected property interest in his employment.

57. In terminating Plaintiff's employment in violation of Plaintiff's Fifth and Fourteenth Amendment property rights, Defendant City of New York and Defendant NYPD acted pursuant to a policy, practice, and/or custom of the NYPD in suspending, demoting, and terminating Plaintiff.

58. In terminating Plaintiff's employment, Defendant City of New York and Defendant NYPD acted under color of law.

59. The acts and/or omissions by Defendant City of New York and Defendant NYPD constituted and resulted in a deprivation of Plaintiff's constitutional rights.

60. As a direct result of the actions of Defendants, Plaintiff has suffered injuries and

9

damages, including but not limited to loss of income, loss of promotional opportunity, and loss of other employment benefits and opportunities, and continues to suffer distress and reputational harm as a result of such deprivation. The full extent of these damages is not yet known.

### AS FOR THE SECOND CAUSE OF ACTION
### AGAINST DEFENDANTS FOR
### VIOLATION OF NEW YORK STATE CONSTITUTION
### (ARTICLE I, § 6 OF THE NEW YORK STATE CONSTITUTION)

61. Plaintiff repeats and reiterates each and every allegation set forth above with the same force and effect as if more fully set forth at length herein.

62. Pursuant to Civil Service Law § 75, Plaintiff, a tenured NYPD officer, has a protected property interest in his employment.

63. In terminating Plaintiff's employment, Defendant City of New York and Defendant NYPD violated Plaintiff's right to due process guaranteed by Article I, § 6 of the New York State Constitution.

64. In terminating Plaintiff's employment, Defendant City of New York and Defendant NYPD acted under color of law.

65. As a direct result of the actions of Defendants, Plaintiff has suffered injuries and damages, including but not limited to loss of income, loss of promotional opportunity, and loss of other employment benefits and opportunities, and continues to suffer distress and reputational harm as a result of such deprivation. The full extent of these damages is not yet known.

### AS FOR THE THIRD CAUSE OF ACTION
### AGAINST DEFENDANTS FOR
### TORTIOUS INTERFERENCE WITH ECONOMIC ADVANTAGE

66. Plaintiff repeats and reiterates each and every allegation set forth above with the same force and effect as if more fully set forth at length herein.

10

67. During his employment with Defendant City of New York and Defendant NYPD, Plaintiff had a decorated record of public service and a reasonable expectation of economic advantages in the form of promotional opportunities, overtime benefits, and retirement benefits as well as opportunities for future employment in the law enforcement field after his employment with NYPD ceased.

68. Defendants were, at all times, aware of Plaintiff's expectancy of these benefits and anticipated opportunities.

69. Defendants wrongfully and knowingly interfered with Plaintiff's expectancy by failing to protect him from the harm described herein and by terminating his employment based on the false accusation that he has ingested drugs.

70. Based on his employment record and length of service, Plaintiff had a reasonable expectation that he would enjoy overtime benefits, promotional opportunities, and other benefits, future employment in the law enforcement field but-for Defendants' wrongful conduct.

71. As a direct result of the actions of Defendants, Plaintiff has suffered injuries and damages, including but not limited to loss of income, loss of promotional opportunity, and loss of other employment benefits and opportunities, and continues to suffer distress and reputational harm as a result of such deprivation. The full extent of these damages is not yet known.

### AS FOR THE FOURTH CAUSE OF ACTION AGAINST DEFENDANTS FOR NEGLIGENCE

72. Plaintiff repeats and reiterates each and every allegation set forth above with the same force and effect as if more fully set forth at length herein.

73. Defendants owed a duty to Plaintiff to prevent events such as those described herein.

11

74. Defendant Psychemedics and Defendant Dr. Cairns breached their respective duties to Plaintiff when they failed to address, correct, or prevent the misconduct complained of herein and, instead, advanced their own interests.

75. Defendant City of New York and Defendant NYPD breached their respective duties to Plaintiff when they summarily "verified" Plaintiff's positive test result based on Psychemedics' hair test results and failed to conduct their own independent analysis to determine if environmental exposure could be the cause of the positive test result and ultimately terminated Plaintiff's employment and/or failed to take proper steps to properly test for drug usage.

76. As a direct result of the actions of Defendants, Plaintiff has suffered injuries and damages, including but not limited to loss of income, loss of promotional opportunity, and loss of other employment benefits and opportunities, and continues to suffer distress and reputational harm as a result of such deprivation. The full extent of these damages is not yet known.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment as follows:

a. Issuing a permanent injunction enjoining Defendant City of New York and Defendant NYPD from making decisions regarding an individual's employment status based solely on the results of hair testing to determine drug usage;

b. Ordering Defendant City of New York and Defendant NYPD to make Plaintiff whole by providing appropriate back pay with interest, front pay, sick leave, disability leave, vacation leave, reimbursement for all lost compensation and benefits, and all other entitlements but for his wrongful termination, in an amount to be determined at trial;

    c.    Ordering Defendant City of New York and Defendant NYPD to immediately and retroactively reinstate Plaintiff to his job title of Detective, and adjust Plaintiff's wage rate, salary, bonuses, seniority, and benefits to levels that they would enjoy but for Defendant City of New York and Defendant NYPD's unlawful policies, customs, practices, and conduct;

    d.    Awarding Plaintiff compensatory damages;

    e.    Awarding punitive damages due to Psychemedics' and Dr. Cairns' willful and/or reckless disregard for Plaintiff's rights;

    f.    Awarding Plaintiff such costs and pre- and post-judgment interest as is allowed by law;

    g.    Awarding Plaintiff reasonable attorneys' fees, expenses and costs of this proceeding;

    h.    Granting such other and further relief as this Court deems just and proper.

Dated: New York, New York  
       October 29, 2019                       THE KURLAND GROUP

                                                    By:   ~//s//~  
                                                        Yetta G. Kurland  
                                                        85 Broad Street, 28th Floor  
                                                     New York, New York 10004  
                                                     Tel. (212) 253-6911  
                                                     Fax (212) 614-2532  
                                                     kurland@kurlandgroup.com

## VERIFICATION

STATE OF NEW YORK )
) ss:
COUNTY OF NEW YORK )

BRIAN QUIRE, being duly sworn says: I am the Plaintiff in this matter. I have read the foregoing Verified Complaint, and know the contents thereof, the same is true to my knowledge, except as to the matters therein stated to be alleged upon information and belief, and so to those matters I believe it to be true.

_____
BRIAN QUIRE

Sworn to before me on the
29th day of October, 2019

_____
Notary Public

YETTA G. KURLAND
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01KU5005642
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES 01/03/20

14