UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BRIAN QUIRE,

                           Plaintiffs,

   -against-

CITY OF NEW YORK; NEW YORK CITY POLICE
DEPARTMENT; PSYCHEMEDICS
CORPORATION; and THOMAS CAIRNS,
individually and in his official capacity as Senior
Scientific Advisor for PSYCHEMEDICS
CORPORATION,

                           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

Index No.: 19-cv-10504 (RA)

Plaintiff Brian Quire ("Plaintiff"), by his attorneys, The Kurland Group, with offices at 85 Broad St., 28th Floor New York, NY 10004, complaining of the Defendants, alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff Brian Quire brings this action against Defendants City of New York; New York City Police Department; Psychemedics Corporation; and Thomas Cairns, individually and in his official capacity as Senior Scientific Advisor for Psychemedics Corporation to secure injunctive and monetary relief from Defendants' conduct that resulted in his suspension, demotion, and ultimate termination from the New York City Police Department, in violation of federal and state law.

2. Plaintiff alleges that Defendants' actions and inactions detailed herein amount to intentional, reckless, and/or negligent acts that Defendants knowingly, willfully, and/or negligently failed to control, prevent, and/or disclose in violation of Plaintiff's constitutional, statutory, and common law rights.

1

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

4. This Court may exercise supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)(2), as Defendants reside and/or do business in this district and the events giving rise to Plaintiff's claims occurred in this district.

6. Plaintiff filed his Notice of Claim within ninety days after his claim arose upon Defendant City of New York by delivering copies of the notice to the person designated by law as a person to whom such claims may be served. Such Notice of Claim was in writing; sworn to by Plaintiff; set forth the nature of the claim, the time, place, and manner by which the claim arose; and the damages and injuries claimed to have been sustained by Plaintiff.

7. Following a 50-H Hearing, Defendants neglected to adjust the claims within the statutory time period.

## JURY DEMAND

8. Plaintiff demands a trial by jury in this action on each and every one of his claims.

## PARTIES

9. **PLAINTIFF BRIAN QUIRE** ("Plaintiff") is an individual residing in the State of New York.

10. **DEFENDANT CITY OF NEW YORK** (the "City" or "City of New York") is a municipality duly incorporated under the laws of the State of New York and maintains its principal

place of business at 1 Centre Street, New York, New York 10007.

11. **DEFENDANT NEW YORK CITY POLICE DEPARTMENT** ("NYPD") is an agency of the City of New York and maintains its principal place of business at One Police Plaza, New York, New York 10007.

12. **PSYCHEMEDICS CORPORATION** ("Psychemedics") is a California corporation conducting business in the State of New York.

13. **THOMAS CAIRNS** ("Dr. Cairns") is an individual residing in the State of California who conducts business in the State of New York.

## PROCEDURAL BACKGROUND

14. On May 15, 2019, Plaintiff initiated the instant litigation by filing a Summons with Notice in New York State Supreme Court, which was served on Defendants City of New York, Psychemedics Corporation, and Thomas Cairns on September 11, 2019 and on Defendant New York City Police Department on September 12, 2019.

15. On October 29, 2019, Plaintiff filed a Verified Complaint, after which Defendants City of New York and NYPD removed this matter to federal court on November 14, 2019.

16. On December 23, 2019, Defendants Psychemedics and Dr. Cairns filed a motion to dismiss Plaintiff's claims against them pursuant to FRCP 12(b)(6) and on January 24, 2020, Defendants City of New York and NYPD filed a motion to dismiss Plaintiff's claims against them pursuant to FRCP 12(b)(6).

17. Pursuant to the Court's Order dated January 10, 2020 [Dkt. No. 20], Plaintiff now files the instant First Amended Complaint.

## **STATEMENT OF FACTS**

18. Plaintiff was appointed as a Police Officer with the NYPD on or around January 9, 2006 and was an exemplary member during his twelve (12) years of public service.

19. Plaintiff has no history of discipline regarding his employment and received high job performance evaluations from his superiors.

20. As a result of his dedicated service, highly-rated job performance, and professionalism, Plaintiff was promoted to Detective in or around September 2015.

21. In addition, during his employment with NYPD, Plaintiff received multiple Meritorious Police Duty ("MPD") and Excellent Police Duty ("EPD") awards for intelligent and valuable police service demonstrating special faithfulness or perseverance, and/or highly creditable acts of police service over a period of time, and/or an intelligent act materially contributing to a valuable accomplishment.

22. Plaintiff held the rank of Detective until in or around August 2016 when he was first demoted, and ultimately terminated in or around February 2018, based solely upon the results of random drug testing performed by Defendants on Plaintiff's hair samples.

23. Plaintiff has no history of exhibiting any signs of drug use and tested negative on all prior drug tests – both random and promotional.

24. Notwithstanding this and based solely on the results of hair testing performed by Defendants, Plaintiff's employment was first suspended, then demoted, and ultimately Plaintiff's employment was terminated with the NYPD in violation of his constitutional rights.

25. On or about April 28, 2016, Plaintiff was ordered by NYPD to report for a random drug screening test, which was performed by Defendants collecting and analyzing hair samples taken from Plaintiff's leg.

26. Upon information and belief, the City of New York and NYPD contract with Psychemedics to provide the drug testing services for employees of the NYPD.

27. While Psychemedics purports to hold a license from the New York State Department of Health in order to provide such services, upon information and belief in issuing this license, the New York State Department of Health takes no position on the validity of the scientific processes employed by Psychemedics but simply certifies compliance with applicable regulations for maintaining a laboratory.

28. Furthermore, Psychemedics contracts to provide hair testing analysis to determine whether an individual has used drugs, despite the fact that, upon information and belief, Psychemedics knows or should know that it is unable to show that hair testing can accurately make such a determination.

29. In specific, Plaintiff asserts that the technology and procedures Psychemedics uses to analyze hair samples can reliably screen for the presence of drugs but cannot reliably determine whether the hair sample tests positive or negative for drugs. Psychemedics has failed to show that it can reliably determine how the drugs in a hair sample that tests positive for drugs entered the hair, i.e. internally from ingestion or externally from environmental contamination.

30. Plaintiff asserts that Psychemedics knows or should know that the hair testing services it provides are not reliable to accurately determine whether an individual whose hair is tested has intentionally ingested drugs.

31. Despite this, Psychemedics continues to market its services in hair testing for the purpose of determining if an employee has intentionally ingested drugs.

32. In specific, Psychemedics provides hair testing services for profit to the NYPD in which it represents it can analyze hair tests of NYPD employees to reliably and accurately

determine whether that member has purposefully ingested drugs.

33. NYPD continues to contract for these testing services from Psychemedics which it uses and relies on to determine whether its employees have purposefully ingested drugs and whether the NYPD should take adverse action against its employees as a result of this determination.

34. Dr. Cairns, a Senior Scientific Advisor for Psychemedics, is Defendants main scientist to support Psychemedics' claims that it can reliably distinguish use from contamination in Psychemedics hair testing.

35. Plaintiff asserts that Dr. Cairns knows or should know that Psychemedics is unable to conclusively demonstrate that its testing process on hair samples can accurately and reliably determine whether drugs that were present in hair samples entered the hair from drug use or from external contamination.

36. Rather than acknowledge this fact and use his scientific resources to provide alternative testing techniques that are scientifically reliable to accurately test for drug use, Plaintiff asserts that Dr. Cairns has acted to justify and bolster Psychemedics position that hair testing is a reliable method for determining drug use.

37. In fact, Plaintiff asserts that Dr. Cairns goes out of his way to oppose concerns that individuals have raised regarding hair testing being improperly used to determine drug use.

38. In specific, Dr. Cairns acts as the lead representative of Psychemedics' efforts to advance hair testing as a tool for determining drug usage, appearing as an expert witness at hearings to testify against individuals who contest the findings, as he did against Detective Quire, and advocating for Psychemedics' position that hair testing can reliably and accurately determine drug usage.

39. Plaintiff asserts that Dr. Cairns is aware of the science that raises questions regarding the reliability of his claims with regards to hair testing. Yet he still works in conjunction with Psychemedics and the NYPD to defend hair testing as a reliable way to determine drug use and obfuscate the glaring reality that Psychemedics' hair testing cannot magically do what no other scientist or laboratory can, that is employ a technology that reliably and accurately determines how drugs that entered the cortex of a hair sample which tested positive for drugs arrived there, i.e. through ingestion versus external contamination.

40. While hair testing may be used, if properly administered, to determine the presence of drugs in a hair sample, the U.S. Food and Drug Administration has not approved hair testing to determine how those drugs got into the hair, whether by ingestion or absorption.

41. Furthermore, the Substance Abuse and Mental Health Services Administration ("SAMHSA") of the U.S. Department of Health and Human Services has found that it is impossible to remove all external contaminants from hair and therefore contamination of hair cannot be distinguish from drug use (*see, e.g.*, The Science of Hair Testing, SAMHSA's Division of Workplace Programs, *available online at* https://www.samhsa.gov/sites/default/files/meeting/documents/makela-literature-summary-dtab-june-2014.pdf, last visited February 7, 2020).

42. Upon information and belief Defendants are aware of these facts yet continue to use and promote hair testing as a means to determine drug use and a positive hair test result as the basis of termination from employment.

43. While Psychemedics promises that "[w]hether you're a pill-popper, a pot-head or a crack-head, Psychemedics . . . has the technology to sniff you out before your potential employer offers you a job," Psychemedics has failed to show that its hair testing can be used to reliably and accurately determine if an individual has in fact used drugs of abuse because it cannot eliminate

the possibility that atmospheric exposure caused the presence of drugs in the sample.

44. Despite this unreliability of Psychemedics' hair testing results, it is the policy of the NYPD and the City of New York to utilize Psychemedics' hair testing services as the exclusive basis to determine whether members of the Police Department have used drugs and therefore given their "zero tolerance" policy to drug use whether these members can remain employed.

45. Moreover, Plaintiff asserts that Psychemedics' hair testing is used by NYPD and the City of New York to perform a determination that Psychemedics has failed to show it can accurately and reliably make—whether or not an employee has in fact used drugs, as opposed to merely being exposed to drugs.

46. This is especially shocking since NYPD's members' employment, and therefore their livelihood, depends on the accuracy of the test result and yet, upon information and belief, NYPD's drug testing policy and procedure deviates substantially from other City agencies reliable drug testing procedures that use a combination of urinalysis and/or blood analysis, which upon information can accurately determine drug usage as opposed to contamination.

47. In or around 1996, NYPD first started using hair analysis in conjunction with the more reliable urinalysis for drug testing of its employees. However, now, and since in or around 2005, the NYPD uses only hair analysis to perform all drug testing of its employees and the results of the hair testing are no longer confirmed or cross-analyzed with urinalysis or any other method of drug testing. Upon information and belief, this change was made in an effort to spend less on drug testing and to make drug testing easier to complete in conjunction with the Department's "zero tolerance" policy of drug use. Ironically, while these changes may have saved Defendant NYPD money, it has also caused the results of its testing to be less reliable.

48. Since 2005, upon information and belief, the NYPD has used Psychemedics as its

exclusive drug testing and analysis laboratory, despite the fact that NYPD knew or should have known that Psychemedics has not shown that hair testing conclusively determines whether or not drug usage has occurred.

49. Since NYPD began using hair testing, this question regarding the reliability of the testing process has been well-documented. For example, when NYPD began its hair testing program, the fraternal organization 100 Blacks in Law Enforcement Who Care issued notified the NYPD regarding their concerns with the hair testing process, citing a 1996 letter from the U.S. Health and Human Services Department, which identified the potential for racial bias and hair color bias to return false positive results at a disparate rate for people of color and women.

50. These concerns further highlighted the unique nature of police work that requires police officers to come into frequent contact with and exposure to drugs of abuse through their daily duties. This reality thereby puts police officers at a heightened risk of a false positive hair test due to external contamination or environmental exposure.

51. Psychemedics was equally on notice with advances in the scientific community and governmental agencies making clear the limitations in hair testing, including numerous peer reviewed publications and reports in the scientific community such as Stout, Ropero-Miller, Baylor, & Mitchell, External Contamination of Hair with Cocaine: Evaluation of External Cocaine Contamination and Development of Performance-Testing Materials, 30 *J. Analytical Toxicology* 490, 490 (2006); Ropero-Miller & Stout, Analysis of Cocaine Analytes in Human Hair II: Evaluation of Different Hair Color and Ethnicity Types, Report to United States Department of Justice, Document No. 234628 (Mar. 31, 2010); D.A. Kidwell, E.H. Lee, and S.F. DeLauder, Evidence for bias in hair testing and procedures to correct bias, *Forensic Science International* 107 93-104 (2000); and S.F. DeLauder and D.A. Kidwell, The incorporation of dyes into hair as a

model for drug binding, *Forensic Science International* 107 39-61 (2000).

52. This reality formed the basis of other Courts' findings that "Psychemedics drug testing procedure…was not sufficiently reliable alone to provide just cause for terminating a[n]… employee" because of "the concerns raised in the scientific community regarding the reliability of the tests," *Matter of Boston Police Dep't Drug Testing Appeals*, 26 Mass. Civ. Serv. Rep. 73 (2013), and because "[t]he ways in which substances, including controlled substances, can incorporate into the hair follicle vary and are not fully understood," ultimately concluding that the "…external contaminants may become absorbed into the hair and, once absorbed, are resistant to removal." *Boston Police Department v. Civil Service Commission, et al*, 483 Mass. 461, 133 N.E.3d 322 (2019. [1]

53. Despite the fact that the Defendants knew or should have known of these concerns and determinations, upon information and belief, NYPD and the City of New York have failed to adjust or modify their drug testing policies or procedures for members of the NYPD and Psychemedics continues to provide unreliable drug testing.

54. Defendants NYPD and City of New York continue to work closely with Psychemedics and Dr. Cairns in continuing the NYPD's hair testing policies and procedures and

---

[1] In this recent decision in October 2019, the Supreme Judicial Court of Massachusetts raised concerns regarding the effectiveness of Psychemedics' washing procedure, stating that "[t]his is because external contaminants may become absorbed into the hair and, once absorbed, are resistant to removal." The Court further held that "[t]he ways in which substances, including controlled substances, can incorporate into the hair follicle vary and are not fully understood," citing scientific literature, including Stout, Ropero-Miller, Baylor, & Mitchell, External Contamination of Hair with Cocaine: Evaluation of External Cocaine Contamination and Development of Performance-Testing Materials, 30 J. Analytical Toxicology 490, 490 (2006) and Ropero-Miller & Stout, Analysis of Cocaine Analytes in Human Hair II: Evaluation of Different Hair Color and Ethnicity Types, Report to United States Department of Justice, Document No. 234628 (Mar. 31, 2010).

The Court also discussed the *Matter of Boston Police Dep't Drug Testing Appeals*, 26 Mass. Civ. Serv. Rep. 73 (2013), "a lengthy decision that included a comprehensive discussion of Psychemedics's drug testing procedure, [in which] the [Civil Service] commission determined that the [hair] test was not sufficiently reliable alone to provide just cause for terminating a tenured department employee" and "the concerns raised in the scientific community regarding the reliability of the test and the effectiveness of the washing procedure to remove external contaminants, and the questions about the ways in which controlled substances can incorporate into a hair follicle." *Id*.

Psychemedics continues to profit from its misrepresentations regarding the reliability of its hair testing.

55. Dr. Cairns is one of the primary scientific advocates of using hair testing to determine drug usage. He is also, upon information and belief, in a leadership position at Psychemedics and has a financial interest in the success of the company.

56. On May 6, 2016, Psychemedics notified NYPD that Plaintiff's hair sample purportedly tested positive for methamphetamine.

57. NYPD's Medical Review Officer MRO then had a duty to interview Plaintiff to determine whether an alternative explanation existed for the purported positive result using its own independent review. *See, e.g.*, 14 CFR §120.113.

58. However, Plaintiff asserts that NYPD did not have a written policy or procedure requiring its Medical Review Officer to do so, and the NYPD failed to employ a proper policy or procedure to properly and independently rule out all alternative explanations for the purported positive test result for Plaintiff's hair.

59. On May 19, 2016, NYPD initiated a disciplinary proceeding against Plaintiff, after which, on June 16, 2016, Plaintiff was suspended from his employment. On July 11, 2016, Plaintiff was demoted from his position as Detective to his prior civil service title of Police Officer. Ultimately, on or around February 16, 2018, Plaintiff's employment with NYPD was terminated based solely on the positive test result provided by Psychemedics.

60. Despite Plaintiff's record of exemplary service and good character, NYPD's policy permitted the termination of Plaintiff's employment based exclusively on Psychemedics' hair test results and Dr. Cairns' explanation thereof.

61. Plaintiff further asserts that not only did Defendants use the unreliable

Psychemedics hair test performed on Plaintiff's hair sample as the only basis for determining Plaintiff had ingested drugs and terminating his employment, but that in performing this test Psychemedics improperly deviated from its own policies and procedures, including but not limited to the cut-off levels and prewash criteria it applied to Plaintiff's hair sample.

62. By and through the acts and/or omissions of Defendants complained of herein, Plaintiff has suffered and will continue to suffer permanent damage to his career including, but not limited to, lost wages and other benefits and privileges of employment, damage to his reputation and earnings potential as well as current and future employment opportunities.

63. By and through the acts and/or omissions of Defendants complained of herein, Plaintiff has suffered and will continue to suffer emotional distress and mental anguish as a result of Defendants' unlawful conduct.

64. By and through the acts and/or omissions of Defendants complained of herein, Plaintiff has suffered and will continue to suffer from violations of his Constitutionally-protected property rights.

### AS FOR THE FIRST CAUSE OF ACTION AGAINST DEFENDANTS FOR VIOLATION OF CONSTITUTIONAL RIGHTS OF PLAINTIFF (UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983)

65. Plaintiff repeats and reiterates each and every allegation set forth above with the same force and effect as if more fully set forth at length herein.

66. Pursuant to Civil Service Law § 75, Plaintiff, a tenured NYPD officer, has a Constitutionally-protected property interest in his employment.

67. Defendants City of New York and NYPD terminated Plaintiff's employment pursuant to the policy, practice, and/or custom of the NYPD and City of New York of suspending, demoting, and/or terminating its employees based solely on the results of hair drug testing

administered in conjunction with Psychemedics and Dr. Cairns.

68. This policy, practice, and/or custom of Defendants City of New York and Defendant NYPD, which is administered in conjunction with Psychemedics and Dr. Cairns, violates the property rights of NYPD employees, including but not limited to Plaintiff, guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

69. In terminating Plaintiff's employment based solely on the results of hair testing, Defendants acted under color of law. Defendants Psychemedics and Dr. Cairns acted jointly with Defendants NYPD and City of New York in their policy of utilizing and administering solely hair tests to determine whether an employee has used drugs of abuse, the result of which caused the deprivation of Plaintiff's constitutional rights.

70. As a direct result of the actions and/or inactions of Defendants, Plaintiff has suffered injuries and damages, including but not limited to loss of income, loss of promotional opportunity, and loss of other employment benefits and opportunities, and continues to suffer distress and reputational harm as a result of such deprivation. The full extent of these damages is not yet known.

### AS FOR THE SECOND CAUSE OF ACTION AGAINST DEFENDANTS FOR VIOLATION OF NEW YORK STATE CONSTITUTION (ARTICLE I, § 6 OF THE NEW YORK STATE CONSTITUTION)

71. Plaintiff repeats and reiterates each and every allegation set forth above with the same force and effect as if more fully set forth at length herein.

72. Pursuant to Civil Service Law § 75, Plaintiff, a tenured NYPD officer, has a Constitutionally-protected property interest in his employment.

73. Defendants City of New York and NYPD terminated Plaintiff's employment pursuant to the policy, practice, and/or custom of the NYPD and City of New York of suspending,

demoting, and/or terminating its employees based solely on the results of hair drug testing administered in conjunction with Psychemedics and Dr. Cairns.

74. This policy, practice, and/or custom of Defendants City of New York and Defendant NYPD, which is administered in conjunction with Psychemedics and Dr. Cairns, violates the property rights of NYPD employees, including but not limited to Plaintiff, guaranteed by Article I, § 6 of the New York State Constitution.

75. In terminating Plaintiff's employment based solely on the results of hair testing, Defendants acted under color of law.  Defendants Psychemedics and Dr. Cairns acted jointly with Defendants NYPD and City of New York in their policy of utilizing and administering solely hair tests to determine whether an employee has used drugs of abuse, the result of which caused the deprivation of Plaintiff's constitutional rights.

76. As a direct result of the actions and/or inactions of Defendants, Plaintiff has suffered injuries and damages, including but not limited to loss of income, loss of promotional opportunity, and loss of other employment benefits and opportunities, and continues to suffer distress and reputational harm as a result of such deprivation.  The full extent of these damages is not yet known.

## AS FOR THE THIRD CAUSE OF ACTION
## AGAINST DEFENDANTS FOR
## NEGLIGENT MISREPRESENTATION

77. Plaintiff repeats and reiterates each and every allegation set forth above with the same force and effect as if more fully set forth at length herein.

78. Defendants owed a duty to Plaintiff to provide accurate and reliable drug testing.

79. Defendants breached this duty by failing to provide accurate and reliable hair testing services to determine whether an employee has used drugs of abuse.

80. Defendants knew or should have known this, and yet they took no corrective action and defended this practice despite the fact that Plaintiff's employment was at stake.

81. Plaintiff was forced to rely on the results of Defendants' hair test, which ultimately resulted in the termination of his employment.

82. As a direct result of the actions of Defendants, Plaintiff has suffered injuries and damages, including but not limited to loss of income, loss of promotional opportunity, and loss of other employment benefits and opportunities, as well as current and future employment opportunities and continues to suffer distress and reputational harm as a result of such deprivation. The full extent of these damages is not yet known.

## AS FOR THE FOURTH CAUSE OF ACTION AGAINST DEFENDANTS FOR NEGLIGENCE

83. Plaintiff repeats and reiterates each and every allegation set forth above with the same force and effect as if more fully set forth at length herein.

84. Defendants owed a duty to Plaintiff to prevent events such as those described herein.

85. Defendant Psychemedics and Defendant Dr. Cairns breached their respective duties to Plaintiff when they failed to provide reliable hair testing services to accurately determine where drugs have been ingested and failed to prevent the misconduct complained of herein and, instead, advanced their own self-interest, to the detriment of Plaintiff.

86. Defendant City of New York and Defendant NYPD breached their respective duties to Plaintiff when they implemented, relied on and/or utilized a drug testing policy in which NYPD summarily "verified" the results of Psychemedics' analysis and ultimately terminated Plaintiff's employment based on such result, despite the fact that Psychemedics cannot show that their hair

testing properly distinguishes between the presence of drugs due to ingestion and the presence of drugs due to passive exposure.

87. As a direct result of the actions of Defendants, Plaintiff has suffered injuries and damages, including but not limited to loss of income, loss of promotional opportunity, and loss of other employment benefits and opportunities, as well as current and future employment opportunities and continues to suffer distress and reputational harm as a result of such deprivation. The full extent of these damages is not yet known.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment as follows:

a. Ordering Defendant City of New York and Defendant NYPD to make Plaintiff whole by providing appropriate back pay with interest, front pay, sick leave, disability leave, vacation leave, reimbursement for all lost compensation and benefits, and all other entitlements but for his wrongful termination, in an amount to be determined at trial;

b. Ordering Defendant City of New York and Defendant NYPD to immediately and retroactively reinstate Plaintiff to his job title of Detective, and adjust Plaintiff's wage rate, salary, bonuses, seniority, and benefits to levels that they would enjoy but for Defendant City of New York and Defendant NYPD's unlawful policies, customs, practices, and conduct;

c. Ordering Defendants to pay Plaintiff compensatory damages;

d. Ordering Defendants Psychemedics and Dr. Cairns to pay Plaintiff punitive damages due to theirwillful and/or reckless disregard for Plaintiff's rights;

  e. Ordering Defendants to pay Plaintiff such costs and pre- and post-judgment interest as is allowed by law;

  f. Ordering Defendants to pay Plaintiff's reasonable attorneys' fees, expenses and costs of this proceeding;

  g. Granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
    February 7, 2020        THE KURLAND GROUP

                By: ~//s//~
                  Yetta G. Kurland
                  85 Broad Street, 28th Floor
                  New York, New York 10004
                  Tel. (212) 253-6911
                  Fax (212) 614-2532
                  kurland@kurlandgroup.com