| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | USDC-SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC#:<br>DATE FILED: 01/28/2021 |
| BRIAN QUIRE,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　　　　v.<br><br>CITY OF NEW YORK, NEW YORK POLICE DEPARTMENT, PSYCHEMEDICS CORPORATION, and THOMAS CAIRNS, *individually and in his capacity as Senior Scientific Advisor for Psychemedics Corporation*,<br><br>　　　　　　　　　　Defendants. | No. 19-CV-10504 (RA)<br><br>OPINION & ORDER |

RONNIE ABRAMS, United States District Judge:

　　Plaintiff Brian Quire filed this action in May 2019 in New York State Supreme Court, bringing claims against the City of New York and the New York Police Department ("the City Defendants") as well as against Psychemedics Corporation and its senior scientific advisor, Thomas Cairns ("the Psychemedics Defendants"). The City Defendants removed this action to federal court in October 2019, after which Plaintiff filed the operative First Amended Complaint ("FAC"). *See* Dkt. 30.

　　Quire, an NYPD officer from 2006–2018, was fired after testing positive for methamphetamine in a random drug screening test performed by Psychemedics. He argues that the method of drug testing employed by Defendants was unreliable, and that his termination was thus in violation of his rights to due process under the U.S. and New York constitutions. He also raises claims for negligence and negligent misrepresentation under the common law of New York. *See* FAC at 12–16. Now before the Court are motions to dismiss filed by the City

Defendants, *see* Dkt. 44, and the Psychemedics Defendants, *see* Dkt. 36. The Court concludes that because Quire received all the process he was entitled to in connection with his termination, he has failed to state a claim for a violation of due process under the federal constitution, and grants Defendants' motions to dismiss as to that claim. The Court further declines to exercise supplemental jurisdiction over his state law claims, and remands the action to New York Supreme Court.

## BACKGROUND

### I. Factual Background

The following facts are drawn from Plaintiff's First Amended Complaint, Dkt. 30 ("FAC."), and are assumed to be true for the purpose of resolving this motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

Quire was appointed as an NYPD officer in January 2006, and was promoted to Detective in September 2015. FAC ¶¶ 18, 20. Following a random drug screening test, however, Quire was demoted in August 2016 and ultimately terminated in February 2018. *Id*. ¶ 22.

The drug test was performed in April 2016 by Defendant Psychemedics Corp., a company that contracts with the City and the NYPD to provide drug tests for NYPD employees. *Id*. ¶¶ 25–26. Psychemedics collected and analyzed a hair sample taken from Quire's leg, which purportedly tested positive for methamphetamine. *Id*. ¶¶ 25, 56. As a result, and based solely on this positive test, the NYPD began disciplinary proceedings against Quire in May 2016; he was subsequently suspended, demoted from his position as Detective, and terminated. *Id*. ¶ 56, 59.

Psychemedics' hair testing, Quire alleges, does not reliably show whether a person has used drugs. Although the technology accurately screens for the presence of drugs in the hair, it cannot determine whether a positive test is the result of the person's internal ingestion of drugs

or from external environmental contamination. *Id*. ¶¶ 28–29, 40–41. The risk of environmental exposure to drug use is significant for police officers, who come into frequent contact with drug use through their daily duties. *Id*. ¶ 50. Psychemedics and Cairns nonetheless represent that they can reliably and accurately determine whether a tested employee has purposefully ingested drugs, and the NYPD continues to rely on those tests to take adverse action against employees. *Id*. ¶¶ 31–34, 44. Dr. Cairns, as a senior scientific advisor for Psychemedics, promotes the accuracy of the hair testing tool and has provided expert testimony on the NYPD's behalf at disciplinary hearings, including at Quire's. *Id*. ¶ 38.

According to Quire, other methods of drug testing, including urinalysis, more reliably demonstrate whether an employee has ingested drugs. Since 2005, however, the NYPD has exclusively used Psychemedics' hair analysis without cross-analyzing the tests with any other methods. *Id*. ¶¶ 47–48. It has done so despite findings by scientific researchers and other courts casting doubts on the reliability of Psychemedics' testing of hair samples. *Id*. ¶¶ 51–52; *see also Bos. Police Dep't v. Civil Serv. Comm'n*, 483 Mass. 461, 466–468 (2019) (in a case involving an applicant to the Boston Police Department, noting reliability concerns involving Psychemedics' drug testing, including the possibility of false positives and the difficulty of removing external contaminants).

As a result of being demoted and terminated, Plaintiff suffered damage to his career and reputation; the loss of wages, employment benefits, future earnings, and employment opportunities; and emotional distress. *Id*. ¶¶ 62–64.

II. **Procedural History**

Following Quire's May 2016 positive drug test result, the NYPD initiated disciplinary proceedings against him. The department charged Quire with methamphetamine use and

suspended his employment on an interim basis pending the outcome of a hearing before the city's Office of Administrative Trials and Hearings ("OATH"). *See* Dkt. 47-2 ("Art. 78 Decision") at 2. An administrative trial took place across six days in April, May, and September 2017, presided over by David Weisel, an Assistant Deputy Commissioner for Trials in the NYPD. *See* Dkt. 45-1, *In the Matter of the Disciplinary Proceedings Against Police Officer Brian Quire* ("OATH Report") at 3. At the hearing, the Department called three witnesses on its behalf, including Cairns. Quire called five witnesses and testified on his own behalf, asserting principally that he "could have been exposed to the drug passively as a result of police work," that "his use of decongestant medicines could have led to the positive result," and that "the procedures in place at the laboratories used in his tests were not reliable." *Id*. at 5. Quire also presented evidence about his opposition to drug use and his good character, including the testimony of three NYPD colleagues who described him as organized, knowledgeable, and reliable. *Id*. at 26–30.

    In support of his claim that the hair drug test was not a reliable indicator that he ingested drugs, Quire testified that his police work frequently involved skin-on-skin contact with fugitives trying to flee, many of whom possessed drugs or had drugs around them. *Id*. at 10. Quire also testified that he frequently wore shorts, which could explain the environmental contamination of hairs on his leg. *Id*. Among the witnesses called by Quire was Dr. David Kidwell, a Navy research chemist who testified that hair testing cannot reliably distinguish between intentional drug ingestion and unintentional drug exposure, and that Psychemedics' hair-washing techniques may not always succeed in removing external contaminants. *Id*. at 13. Testifying on behalf of the NYPD, Cairns disputed these assertions. He testified that when drugs are ingested, as opposed to merely present in the external environment, they "tend to make it into the microfibrils and

macrofibrils of the hair," effectively becoming "trapp[ed]" there and insusceptible to removal through washing. *Id*. at 18. Cairns estimated that, based on the amount of methamphetamine found in Quire's hair samples, Quire ingested between 200 to 400 milligrams of the illicit drug per month. *Id*. at 14.

On the basis of competing expert testimony from Cairns and Kidwell, ADC Weisel concluded that the hair-washing technique employed by Psychemedics could adequately distinguish between the internal ingestion of methamphetamine and external contamination. *Id*. at 15. ADC Weisel further rejected Quire's claim that his positive test result could have been caused by his use of a nasal spray and other medications. *Id*. at 23. The administrative court rejected Quire's argument that his due process rights were violated when the NYPD medical review officer failed to make an independent and impartial determination in interpreting the test results. ADC Weisel ultimately found Quire to be guilty of possessing and ingesting methamphetamine, and recommended to the NYPD commissioner that he be terminated from employment. *Id*. at 33. Quire challenged that recommendation before the NYPD commissioner, who rejected his arguments and adopted the OATH Report's recommendations in full. As a result, Quire was fired. *See* Art. 78 Decision at 3.

Following his termination, in June 2018, Quire initiated proceedings in New York Supreme Court pursuant to Article 78 of New York's Civil Practice Law.[1] His petition alleged that (1) the NYPD's decision to terminate him was not supported by substantial evidence; (2) ADC Weisel applied the wrong burden of proof in the OATH proceeding; and (3) the penalty of termination was disproportionate to the offense. *Id*. at 4. In May 2019, the Supreme Court held

---

[1] "Article 78, which supplanted the common law writs of certiorari, mandamus, and prohibition under New York law, permits judicial review of actions by state and local agencies and officers." *Jolly v. Coughlin*, 76 F.3d 468, 472 (2d Cir. 1996); *see* N.Y.C.P.L.R. §§ 7801–7806.

that ADC Weisel correctly applied a preponderance of the evidence standard, and transferred the remaining questions to the Appellate Division, First Department, pursuant to NY CPLR § 7804(g). *Id*. at 6. Upon transfer, the First Department held that "[t]he determination that petitioner possessed and ingested methamphetamine is supported by substantial evidence in the record," noting that the hair samples from Quire's leg were repeatedly tested by independent laboratories. *Quire v. City of New York*, No. 12554, 2020 WL 7061767, at *1 (N.Y. App. Div. Dec. 3, 2020). The First Department also upheld the penalty, stating that "[t]he Commissioner's dismissal of a police officer for using illegal drugs is not so disproportionate to the offense as to be shocking to one's sense of fairness." *Id*. at *2 (quoting *Trotta v. Ward,* 77 N.Y.2d 827, 828, (1991)).

Quire filed the instant action in state court in May 2019 (while the Article 78 petition was still pending), and Defendants removed the action to this court. *See* Dkt. 2. After both sets of defendants filed motions to dismiss, *see* Dkts. 12, 24, Quire filed the operative amended complaint in February 2020. *See* Dkt. 30. He asserts claims for violations of due process pursuant to 42 U.S.C. § 1983 and the New York State Constitution, as well as for negligent misrepresentation and negligence. As relief, Plaintiff seeks: (a) compensation for lost wages and benefits, (b) reinstatement to his job title, pay, and seniority level as a Detective; (c) compensatory damages, as well as punitive damages from the Psychemedics Defendants; and (d) costs and attorneys' fees.

On March 6, 2020, the Psychemedics Defendants moved to dismiss all claims against them, arguing that (1) they are not state actors and are thus not liable under Section 1983 and the federal and state constitutions; (2) they are not liable for negligent misrepresentation because Quire has failed to allege the requisite special relationship giving rise to a duty; and (3) Quire's

negligence claim fails because they did not breach any duties owed to Quire, and even if they did, their actions were not the proximate cause of his demotion and firing. *See* Dkt. 37 ("Psychemedics Mem."). On March 12, 2020, the City Defendants moved to dismiss all claims against them, arguing that (1) the NYPD is not a suable entity; (2) Quire's due process claims are precluded under the doctrines of res judicata and collateral estoppel as they were raised and decided in his OATH disciplinary proceedings and in the subsequent Article 78 proceedings in state court; (3) plaintiff was not denied due process because of the existence of adequate post-deprivation remedies, of which he availed himself; (4) Quire's claims against the City Defendants fail to establish a municipal policy or custom for purposes of *Monell* liability; and (5) the state law tort claims fail because Quire has not plausibly alleged that the City Defendants owed him any duties. *See* Dkt. 46 ("City Mem.").

## LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (citation omitted). In deciding a motion to dismiss, courts may consider matters of public record, including state court documents and decisions. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012); *Williams v. New York City Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (on a motion to dismiss, "[t]he district court did not err in considering

[plaintiff's] Article 78 petition and state court decision because they were public records, and thus appropriate for judicial notice.").

## DISCUSSION

### I. Plaintiff's Claim for Violation of Due Process Under the Federal Constitution

The gravamen of Quire's complaint is that it was a violation of his rights to due process when the NYPD terminated his employment on the basis of Psychemedics' allegedly unreliable hair drug test. *See* FAC at 12-13. Defendants make a number of related arguments in moving to dismiss this claim. First, they argue that Quire's due process claim was raised and decided in the OATH hearing and in the state-court proceedings, and is therefore barred under the doctrine of *res judicata*, or claim preclusion. Second, they argue that factual issues concerning the reliability of Psychemedics' drug testing and whether evidence showed that Quire ingested methamphetamine were necessarily decided in the prior proceedings, and that Quire had a full and fair opportunity to litigate these issues, such that his due process claim is now barred under the doctrine of collateral estoppel, or issue preclusion. Third, they argue that the due process claim fails on the merits, because Quire received all the process he was entitled to in advance of and following the termination of his employment, including a trial-like OATH hearing prior to his termination and the Article 78 proceeding in state court following his termination. The Psychemedics Defendants further argue that the due process claim must be dismissed as to them, asserting that they are neither state actors nor fairly treatable as such. The City Defendants further argue that Quire's due process claim against the City should be dismissed pursuant to the rule set forth in *Monell v. Dep't of Social* Services, 436 U.S. 658 (1978) for failure to allege facts giving rise to municipal liability.

The Court agrees with Defendants that, while Quire had a constitutionally protected property interest in his employment, he received all the process he was due in connection with the deprivation of that interest. Accordingly, the Court holds that the complaint fails to state a claim for violations of due process.[2]

"The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, 'only against deprivations without due process of law.'" *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (quoting *Parratt v. Taylor,* 451 U.S. 527, 537 (1981)). Defendants concede that Quire, as a tenured public employee, had a constitutionally protected property interest in his continued employment with the NYPD. *See* City Mem. at 15; Psychemedics Mem. at 9. Accordingly, the question of whether Quire's constitutional rights were violated depends on what process he was provided in connection with his firing and whether that process was constitutionally adequate.

When an employee who has a property interest in his employment is fired, "procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards." *Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545–46, (1985)); *see also Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 212 (2d Cir. 2002).[3] The need for "some form of pretermination hearing" derives from "a balancing of . . . the

---

[2] The Court need not reach the questions of whether the prior proceedings had a preclusive effect on Quire's claims, whether Psychemedics and Cairns are state actors for purposes of establishing their liability for constitutional violations, or whether Quire has adequately alleged the existence of a municipal policy or custom. *See Sindone v. Kelly*, 254 F. App'x 58, 60 (2d Cir. 2007) (declining to reach *res judicata* arguments when affirming dismissal of due process claim).

[3] In cases where the alleged due process violation is based on "random, unauthorized acts by state employees," the availability of a meaningful post-deprivation remedy such as an Article 78 proceeding is sufficient to defeat a due process claim. *See Hellenic Am. Neighborhood Action*

private interests in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." *Loudermill*, 470 U.S. at 542–543 (citing *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)). The "requisite [pre-termination] hearing is a minimal one" and there is no requirement that it be conducted before a neutral decision maker. *Locurto*, 264 F.3d at 173-74. The employee is "entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill*, 470 U.S. at 546.

Here, Quire benefited from extensive procedural safeguards both prior to and following his termination, allowing him multiple opportunities to challenge the NYPD's charge that he used methamphetamine, including by raising a sophisticated challenge to the scientific reliability of Psychemedics' testing method. Following his positive drug test results (from two separate laboratories), Quire was first interviewed by a medical review officer with the NYPD, who discussed with him the positive test results and attempted to ascertain whether any of the prescription medications he was taking could have triggered a false positive. Art. 78 Decision at 2. After determining that none of the medications could have caused a false positive, the medical review officer referred the investigation to the NYPD Internal Affairs Bureau, which charged Quire with methamphetamine use. *Id*. Quire underwent a six-day disciplinary hearing before OATH, at which he was represented by counsel and presented evidence on his behalf, including

---

*Comm. v. City of New York,* 101 F.3d 877, 880 (2d Cir.1996). But "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *Id*. In such a case, the availability of post-deprivation procedures is nonetheless a factor to be considered in the analysis of whether the pre-termination procedures were adequate. *See Rothenberg v. Daus*, 481 F. App'x 667, 676 (2d Cir. 2012) (citing *Rivera-Powell*, 470 F.3d at 466).

by calling five witnesses and testifying himself. The extensive evidence he adduced included: (1) expert testimony from Dr. Kidwell that cast doubt on the reliability of Psychemedics' ability to distinguish between the internal congestion of illicit drugs and environmental contamination; (2) testimony to the effect that his positive test result could have resulted from the use of a nasal spray and other medications; (3) evidence showing Quire's personal likelihood of environmental exposure to drugs; and (4) evidence regarding Quire's reliable and responsible character, his personal objections to drug use, and the acclaim he had received from colleagues as a law enforcement officer. *See generally* OATH Report. After ADC Weisel issued the OATH Report finding, by a preponderance of the evidence, that Quire wrongfully possessed and ingested methamphetamine, and recommending his termination, Quire had the opportunity to challenge the report before the NYPD Commissioner. *See* Art. 78 Decision at 3. The Commissioner adopted the Report's findings and recommendations in February 2018, and it was only at that point that petitioner was fired. *Id*. Following his termination, Quire took advantage of the Article 78 procedure in state court. His claims were reviewed by the Supreme Court, in the first instance, and then transferred to the Appellate Division, which ultimately held that "[t]he determination that petitioner possessed and ingested methamphetamine is supported by substantial evidence in the record." *Quire*, 2020 WL 7061767, at *1.

Taken together, these procedures were adequate to safeguard Quire's constitutionally protected interest in his employment. "The OATH pre-termination process provided [Quire] with notice of the charges [he] faced, the evidence underlying those charges and an opportunity to be heard at an administrative hearing where [his] counsel was able to present evidence on [his] behalf and challenge the evidence adduced against [him]." *Merced v. Ponte*, No. 17-CV-4918 (KAM), 2019 WL 1208791, at *10 (E.D.N.Y. Mar. 13, 2019), *aff'd*, 807 F. App'x 127 (2d Cir.

2020). "This sort of pre-termination process provided under New York law is certainly beyond 'minimal' and exceeds the 'very limited' constitutional requirement." *Baker v. Schriro*, No. 10-CV-4227 (RRM), 2011 WL 6026237, at *3 (E.D.N.Y. Dec. 2, 2011). Moreover, following his termination, Quire took advantage of the "Article 78 procedure[, which] diminishe[d] the risk of an erroneous deprivation because [he] receive[d] an additional hearing that the Second Circuit has 'on numerous occasions' held to be 'a perfectly adequate post-deprivation remedy.'" *Pierre v. New York City Taxi & Limousine Comm'n*, No. 17-CV-973 (MKB), 2017 WL 1417257, at *6 (E.D.N.Y. Apr. 19, 2017) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 881 (2d Cir.1996)). "Although the availability of Article 78 proceedings is not an absolute relief against procedurally flawed initial hearings, it nevertheless provides a 'full adversarial hearing' to remedy error." *Id* (quoting *Locurto*, 264 F.3d at 171).

Federal courts in New York have repeatedly held that the pre- and post-termination processes embodied in an OATH hearing and an Article 78 proceeding together constitute sufficient protection of constitutionally protected interests. *See Singh v. City of New York*, No. 19-CV-5030 (PKC), 2020 WL 5752157, at *12 (E.D.N.Y. Sept. 24, 2020) ("Courts have . . . found that the combination of an OATH hearing and the Article 78 procedure provide[s] adequate process."); *Astoria Gen. Contracting Corp. v. Office of Comptroller of City of New York*, 159 F. Supp. 3d 385, 401 (S.D.N.Y. 2016) (same); *Leary v. Civil Serv. Employees Ass'n*, No. 11-CV-716 (CS), 2012 WL 1622611, at *8 (S.D.N.Y. May 9, 2012), *aff'd*, 516 F. App'x 42 (2d Cir. 2013) (NYPD disciplinary hearing, "along with the availability of an Article 78 proceeding to challenge the outcome, meet[s] the requirements of the Due Process Clause"); *Longo v. Suffolk Cty. Police Dep't Cty. of Suffolk*, 429 F. Supp. 2d 553, 559 (E.D.N.Y. 2006) ("Courts in this circuit as well as the Second Circuit Court of Appeals have held, clearly and

repeatedly, that the combination of Section 75 and 78 provide a terminated public employee with remedies that are consistent with the requirements of the due process clause of the Constitution."). Accordingly, the Court finds that the processes afforded to Quire adequately safeguarded his constitutionally protected interest in his employment with the NYPD, and that the complaint therefore fails to state a claim for violation of his right to due process.

In resisting this conclusion, Quire makes arguments that do not meaningfully grapple with Defendants' assertion that he has received all the process that was due. In his opposition to the City Defendants' motion, Quire states:

> While City Defendants argue that Plaintiff received all the process to which he was entitled, the prior summary proceedings *do not preclude* Plaintiff from now raising different issues concerning City Defendants' hair testing policy itself and seeking money damages for deprivation of his constitutionally-protected property interest in his employment. By City Defendants' logic, they *could never be sued* because all issues are resolved through either the underlying disciplinary hearing or an Article 78 proceedings.

Pl. Opp. to City Mot., Dkt. 48, at 6 (emphasis added). Similarly, in his opposition to the Psychemedics' Defendants' motion, Quire argues that, in asserting that he has been afforded all the process due to him,

> Psychemedics Defendants imply that they are above reproach and could never be sued for their wrongdoing in federal court. But the OATH proceeding and Article 78 proceedings *are simply not relevant* to the instant matter.

Pl. Opp. to Psychemedics Mot., Dkt. 50, at 10 (emphasis added). These assertions conflate Defendants' preclusion arguments (i.e., that Quire's claims are barred because they were already decided in the prior proceedings) with Defendants' merits arguments (i.e., that Quire did not suffer a violation of due process because the prior proceedings represented constitutionally sufficient process). Even if Quire is correct that "the prior summary proceedings do not preclude" him from challenging Psychemedics' drug testing procedures and the NYPD's reliance on them—a question the Court declines to address—the prior proceedings are plainly "relevant"

13

to the instant matter. It is axiomatic that the Due Process Clause is violated only when an individual is deprived of life, liberty, or property *without constitutionally sufficient process*. *See Rivera-Powell*, 470 F.3d at 464. In holding that Quire received all the process to which he was entitled, the Court, contrary to what Quire argues, is not suggesting that Defendants "could never be sued for their wrongdoing." The Court's conclusion is rather that, because Quire's firing was conducted in accordance with constitutionally sufficient safeguards, Defendants have not violated the Due Process Clause in the first place. Quire's arguments, by focusing largely on res judicata and collateral estoppel, skirt around the question of the minimum procedures required by the Constitution.

Also in the context of responding to Defendants' preclusion arguments, Quire argues that the OATH hearing was constitutionally deficient because "[t]here was no independent trier of fact." Dkt. 50 at 10. Even if this were true, however, it would still not alter the Court's due process analysis. The Second Circuit has made clear on multiple occasions that the requisite pre-termination hearing does not require a "neutral adjudicator" so long as the "state affords plaintiff, subsequent to his termination, a full adversarial hearing before a neutral adjudicator." *Locurto*, 264 F.3d at 174. The Second Circuit has also made clear that an Article 78 proceeding in state court constitutes such a "wholly adequate post-deprivation hearing," *id.* at 175, in part because it allows a petitioner to "raise claims that the agency adjudicator was biased and prejudged the outcome," *id.* at 174. *See also Sindone v. Kelly,* 439 F.Supp.2d 268, 278 (S.D.N.Y. 2006), *aff'd* 254 F. App'x 58 (2d Cir. 2007) (police officer could not "sustain a due process claim on the ground that he was denied a right to a neutral arbitrator" prior to his termination, particularly in light of "the long recognized classification of Article 78 special proceedings as adequate adversarial hearings for federal due process purposes"). Accordingly, the fact that the OATH

14

proceeding was conducted before an allegedly biased administrative law judge for the NYPD does not mean that Quire's pretermination hearing was constitutionally insufficient.

For the foregoing reasons, the Court grants Defendants' motions to dismiss as to Quire's due process claim under the federal constitution. Although Quire seeks leave to amend, *see* Dkt. 50 at 21–22, that request is denied. In light of the pre- and post-termination procedures that Quire availed himself of—procedures which have been repeatedly held to constitute due process of law—the Court finds that granting leave to amend would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (granting leave to amend is futile where "[t]he problem with [plaintiff's] causes of action is substantive; better pleading will not cure it"). Quire's federal due process claim is accordingly dismissed with prejudice.

## II.    State Law Claims

Plaintiff also brings claims against all Defendants for (1) violation of due process under the New York State Constitution; (2) negligent misrepresentation; and (3) negligence. *See* FAC at 13–16. Pursuant to 28 U.S.C. § 1367(c)(3), "a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." *Schaefer v. Town of Victor*, 457 F.3d 188, 210 (2d Cir. 2006). Although declining to exercise supplemental jurisdiction in such a case is not "absolutely mandatory," *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998), in "the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988). In cases where a district court may "relinquish jurisdiction over a removed

case involving pendent claims, the court has discretion to remand the case to state court." *Id*. at 351; *see also Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 301 (2d Cir. 2003).

Having dismissed the complaint's only federal claim well before trial, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. "[I]n the interest of comity," *Arthur Glick Truck Sales, Inc. v. H.O. Penn Mach. Co.*, 332 F. Supp. 2d 584, 586 (S.D.N.Y. 2004), and given that Quire's claims bear on "the state's interest in the administration of its government," *Seabrook v. Jacobson*, 153 F.3d. 70, 72 (2d Cir. 1998), the surviving claims are remanded to the state court in which this action originated.

In doing so, the Court notes without deciding that Quire's claim for violations of due process under the New York constitution may no longer be viable in light of the Court's determination today that Plaintiff's federal due process rights were not violated. *See Algarin v. New York City Dept. of Correction*, 460 F. Supp. 2d 469, 478 (S.D.N.Y. 2006) (because the federal and New York constitutional rights to due process are "virtually coextensive," a finding that plaintiff's federal due process rights were not violated "dictates the conclusion that plaintiff's parallel rights under the New York State Constitution were also not infringed"); *DeMartino v. New York State Dep't of Labor*, 167 F. Supp. 3d 342, 373–74 (E.D.N.Y. 2016) ("The due process guarantees of the New York Constitution have been interpreted by New York courts generally to be coextensive with federal due process protections."). The Court nonetheless leaves that question to be addressed in the first instance by the state court.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted as to Quire's due process claim under the federal constitution, which is dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over the remaining state law claims, which can be

addressed in the first instance in state court. The Clerk of Court is respectfully directed (1) to terminate the motions pending at Dkt. 36 and Dkt. 44; (2) to remand the action to New York State Supreme Court; and (3) to close this case.

SO ORDERED.

Dated:      January 28, 2021
               New York, New York

Ronnie Abrams
United States District Judge